**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|                                      |   |                                  |
|--------------------------------------|---|----------------------------------|
| ANGALIA MOORE,                       | ) |                                  |
|                                      | ) |                                  |
|     Plaintiff,   | ) |                                  |
|                                      | ) |                                  |
|     v.           | ) | Civil Action No. 16-cv-527 (TSC) |
|                                      | ) |                                  |
| NANCY A. BERRYHILL[1],               | ) |                                  |
|                                      | ) |                                  |
|     Defendant.   | ) |                                  |

**MEMORANDUM OPINION**

Plaintiff Angalia Moore, appearing *pro se*, challenges the denial of her application for disability insurance benefits. Defendant has moved for judgment of affirmance (ECF No. 14), and Plaintiff has moved for judgment of reversal (ECF No. 17). For the reasons explained below, Defendant's motion will be GRANTED and Plaintiff's motion will be DENIED.

**I. BACKGROUND**

On January 2, 2013, Plaintiff, approaching her 55th birthday, applied for disability benefits, alleging that she was unable to work because of disabling conditions that began on April 10, 2012 (onset date). (Admin. Record ("AR") 191, ECF No. 7). Plaintiff listed her disabling conditions as depression, asthma, liver disease and thyroid. (*See* AR 276). Her claim was denied initially on March 22, 2013, and upon

---

[1] By substitution pursuant to Fed. R. Civ. P. 25(d).

reconsideration on June 6, 2013. Plaintiff was granted a hearing before an Administrative Law Judge ("ALJ"), which was held on March 4, 2015. Plaintiff, appearing with a non-attorney representative (AR 150), testified at the hearing, as did an impartial vocational expert, Dr. James Michael Ryan. (*See* AR 18-28, June 9, 2015 ALJ Dec., ECF No. 7-2; AR 47-80, Tr. of Oral Hrg.). The ALJ found:

> 1. Plaintiff meets the insured status requirements of the Social Security Act through March 30, 2017.
>
> 2. Plaintiff has not engaged in substantial gainful activity since April 10, 2012, the alleged onset date. 20 CFR 404.1571 *et seq*.
>
> 3. Plaintiff has the following severe impairments: "probable" confusional migraine, asthma, and obesity. 20 CFR 404.1520(c).
>
> 4. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. 20 CFR 404.1520(d), 404.1525 and 404.1526.
>
> 5. Plaintiff has the residual functional capacity to perform medium work.
>
> 6. Plaintiff is capable of performing past relevant work as a tax preparer, accounts receivable clerk, and an office manager[,] [which] does not require the performance of work-related activities precluded by the claimant's residual functional capacity. 20 CFR 404.1565.
>
> 7. Plaintiff has not been under a disability, as defined in the Social Security Act, from April 10, 2012, through the date of this decision (on June 9, 2015). 20 CFR 404.1520(f).

(AR 20, 22, 27). In a letter dated December 31, 2015, the Appeals Council denied Plaintiff's request for review. (AR 1).

### 1. Physical Impairments

The ALJ found that Plaintiff's physical impairments "have caused more than minimal limitation in [Plaintiff's] ability to work" but found "very little objective evidence to support [Plaintiff's] allegations of disabling impairments." (AR 20). The ALJ also considered Plaintiff's reports and testimony that she had experienced seizures and "seizure-like activity," and had a speech impediment, but found no "clinical and/or diagnostic evidence of a seizure disorder or epilepsy" and thus no "medically determinable impairment." (*Id*.). Similarly, the ALJ did not "consider" Plaintiff's alleged speech impediment to be a medically determinable impairment partly because of "the lack of a formal diagnosis," but also because of Plaintiff's "inconsistent statements" and testimony about its appearance and duration. (AR 21).

### 2. Mental Impairments

The ALJ acknowledged that "[t]he record documents a mental health impairment variously diagnosed" but found no "evidence of mental health concerns or treatment other than the diagnosis of 'major depression, in remission,'" which "was made [in March 2011] at a court-mandated psychiatric evaluation." (AR 21). The ALJ determined from the 2011 medical report that Plaintiff had then "endorsed a history of depression, with crying spells and suicidal thoughts[,]" received therapy between 2008 and 2010, was prescribed medicine "in the past," but "had not taken any medication in two years." (*Id*.). The ALJ added that Plaintiff's "mental status evaluation was normal." (*Id*.)

The ALJ considered "the four broad functional areas set out in the disability regulations for evaluating mental disorders," encompassing "activities of daily living, social functioning, concentration, persistence or pace, and episodes of decompensation, of extended duration" but found that the record contained "no [documented] limitations" on Plaintiff's daily living, social functioning and concentration. (AR 22). The ALJ also found that Plaintiff had "experienced no episodes of decompensation . . . of extended duration," and attributed Plaintiff's self-described mental limitations "solely . . . to her physical impairments." The ALJ concluded: "Because the claimant's medically determinable mental impairments cause no limitation in any of the first three functional areas and 'no' episodes of decompensation, which have been of extended duration in the fourth area, they are nonsevere." (AR 22) (citing 20 CFR 404.1520a(d)(1)).

The ALJ examined various other medical diagnoses in the record made between 2011 and 2015 but concluded that none of Plaintiff's impairments, singularly or combined, met or medically equaled the severity of one of the Act's listed impairments. (AR 21-22).

### 3. Medical Opinions

The ALJ considered the written report of Dr. Rebecca Brosch, who conducted a consultative psychological examination of Plaintiff in January 2015. At that time, Plaintiff "indicated that she was living with her adult son, who had 'essentially become her caretaker.'" (AR 21). Plaintiff attributed her work stoppage in 2012 to a "seizure disorder and development of a severe speech impediment" and conveyed the concerns

4

of her neurologist "that she may have Huntington's disease." (*Id*.). Plaintiff also described engaging in seriously impulsive behavior, as well has having anxiety, panic attacks and mood elevations, among other symptoms. (*Id*.). Dr. Brosch "observed" Plaintiff as having "a 'severe speech impediment,' with stuttering and stammering," and "a 'dysphoric and irritated' affect, and dysthymic mood." (*Id*.). Dr. Brosch "opined" that Plaintiff "had 'moderate' limitation in her ability to respond appropriately to usual work situations and changes in a routine work setting; 'moderate' to 'marked' limitations in her ability to understand, remember, and carry out complex instructions, and [to] interact appropriately with the public[,] co-workers[,] [and] supervisors; and 'marked to 'severe' limitations in her ability to make judgments on complex work-related decisions." (AR 21-22). The ALJ gave "little weight" to Dr. Brosch's observations, finding them "inconsistent with the record as a whole and appear based solely on [Plaintiff's] subjective report[ing]." (AR 22).

The ALJ also considered the findings of Dr. Justine Magurno, who also conducted a consultative examination of Plaintiff in January 2015. Dr. Magurno "observe[d]" Plaintiff's "'abnormal speech' and assessed her with 'marked communication limitations.' " (AR 26). The ALJ noted that Plaintiff had reported dizziness "but the physical examination findings were normal." (*Id*.). Dr. Magurno opined that Plaintiff "retained the ability to lift and carry up to ten pounds continuously, and up to twenty pounds occasionally; . . . had no limitations in sitting, standing, or walking; and . . . had to avoid exposure to unprotected heights, moving machinery, humidity and wetness, pulmonary irritants, and extreme temperatures."

5

(*Id.*). The ALJ assigned "partial weight" to Dr. Magurno's opinion, finding the lifting, carrying, and speech limitations "not substantiated by any objective clinical findings of record." (*Id.*). The ALJ further found "no clinical or diagnostic findings of record that would warrant more significant [lifting and carrying] limitations than those found by the State medical consultants" (*id.*), who found that Plaintiff "had retained the capacity to perform work at a medium exertional level, with additional environmental limitations, given her asthma and alleged history of fainting" (*id.* at 25).

The ALJ considered as well numerous outpatient and emergency room hospital records and the treatment records of Plaintiff's primary care physicians, Dr. Anne Cioletti and Dr. Godswill Okoji. (*See generally* AR 20-27).

## II. LEGAL STANDARD

### 1. Statutory Framework

The D.C. Circuit has explained:

> To qualify for disability insurance benefits and supplemental security income under Titles II and XVI of the Act, [the claimant] must establish that she is "disabled." 42 U.S.C. §§ 423(a)(1)(D), 1382(a)(1). "Disability" means the "inability to engage in any substantial gainful activity by reason of any medically determinable or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(A). With certain exceptions . . . , an individual is disabled "only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." *Id.* §§ 423(d)(1)(A), 1382c(a)(3)(B).
>
> The Commissioner has established a five-step sequential evaluation process for assessing a claimant's alleged disability. *See* 20 C.F.R. §§ 404.1520, 416.920. The claimant carries the burden of proof on the

6

> first four steps. *Id*. §§ 404.1520, 416.920. First, the claimant must demonstrate that she is not presently engaged in "substantial gainful" work. *Id*. §§ 404.1520(b), 416.920(b). Second, a claimant must show that she has a "severe impairment" that "significantly limits [her] physical or mental ability to do basic work activities." *Id*. §§ 404.1520(c), 416.920(c). Third, if the claimant suffers from an impairment that meets the duration requirement and meets or equals an impairment listed in Appendix 1 to the Commissioner's regulations, she is deemed disabled and the inquiry is at an end. *Id*. §§ 404.1520(d), 416.920(d). If the claimant does not satisfy step three, the inquiry proceeds to the fourth step, which requires her to show that she suffers an impairment that renders her incapable of performing "past relevant work." *Id*. §§ 404.1520(e), 416.920(e). Once a claimant has carried the burden on the first four steps, the burden shifts to the Commissioner on step five to demonstrate that the claimant is able to perform "other work" based on a consideration of her "residual functional capacity" (RFC), age, education and past work experience. *Id*. §§ 404.1520(f), 416.920(f).

*Butler v. Barnhart*, 353 F.3d 992, 997 (D.C. Cir. 2004) (pronoun alterations in original). The ALJ "has the power and the duty to investigate full all matters in issue, and to develop the comprehensive record required for a fair determination of disability." *Id*. at 999 (quoting *Simms v. Sullivan*, 877 F.2d 1047, 1050 (D.C. Cir. 1989) (internal quotation marks and other citation omitted)).

### 2. Review Standard

The district court is empowered to review "any final decision of the Commissioner of Social Security made after a hearing to which [the plaintiff] was a party." 42 U.S.C. § 405(g). Judicial review is limited, however, to assessing from the pleadings and administrative record whether (1) the decision is supported by "substantial evidence in the record," and (2) the "the relevant legal standards" were applied correctly. *Butler*, 353 F.3d at 999 (citations omitted); *Igonia v. Califano*, 568 F.2d 1383, 1389 (D.C. Cir. 1977). If the answer is yes to both requirements, the

Commissioner's "ultimate determination will not be disturbed[.]" *Butler*, 353 F.3d at 999. Plaintiff bears the "burden of demonstrating" the opposite. *Lane-Rauth v. Barnhart*, 437 F. Supp. 2d 63, 64 (D.D.C. 2006) (citing *Curry v. Apfel*, 209 F.3d 117, 122 (2d Cir. 2000) (other citation omitted)). If "additional evidence [is needed] for any reason," the court should remand the case to the Commissioner, as "[t]he Act directs the court to enter its judgment upon the pleadings and the transcript of the record." *Igonia*, 568 F.2d at 1389.

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Butler*, 353 F.3d at 999 (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and other citation omitted)). Its showing requires "more than a scintilla [of evidence], but . . . something less than a preponderance of evidence." *Id*. (citation and internal quotation marks omitted). Although the Court must closely scrutinize the entire record, *Butler*, 353 F.3d at 999, "[s]ubstantial-evidence review is highly deferential to the agency fact-finder," and "reversal of an agency decision under that standard is rare." *Rossello ex rel. Rossello v. Astrue*, 529 F.3d 1181, 1185 (D.C. Cir. 2008). A court may not "review the case 'de novo' or reweigh the evidence," nor may it substitute its judgment for that of the Commissioner. *Guthrie v. Astrue*, 604 F. Supp. 2d 104, 112 (D.D.C. 2009) (citations omitted). In other words, the court is "not to determine [itself] whether [Plaintiff] is disabled" but "only whether the ALJ's finding that she is not is based on substantial evidence and a correct application of the law." *Butler*, 353 F.3d at 999.

## III. ANALYSIS

As an initial matter, Plaintiff contends that "[a]ll parties are in agreement on the first three steps [and] [s]tep four [is] the area of disagreement." (Pl.'s Br. at 1, ECF No. 16). She is mistaken. As indicated above, the ALJ found that Plaintiff had satisfied step one (not engaged in substantial gainful work since the onset date) and step two (severe impairments limiting her ability to work). (AR 20). The third step requires "the claimant" to show that she "suffers from an impairment that meets the duration requirement and meets or equals an impairment listed in Appendix 1 to the Commissioner's regulations." *Butler*, 353 F.3d at 997. The ALJ specifically found that Plaintiff has no "impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in . . . Appendix 1[.]" (AR 22). Had the ALJ found the opposite, Plaintiff would have been "deemed disabled and the inquiry" would have ended. *Butler*, 353 F.3d at 997 (citing 20 C.F.R. §§ 404.1520(d), 416.920(d)); (*see* AR 19) (indicating same)).

Plaintiff contends that the ALJ (1) "erred in rejecting her symptom testimony and . . . assigning little weight to the opinions of her treating medical caretakers"; (2) "did not give full consideration to all of the health issues[,] limiting [the] decision to Neurological area, instead of all areas of physical and mental health"; and (3) "failed to consider [her] advanced age" and that she "at this stage . . . is un-trainable."[2] (Pl.'s Br.

---

[2] Plaintiff attaches to her motion a letter dated September 28, 2016, from a physician seeking approval of insurance coverage for a "life-saving" asthma medication. (ECF No. 17 at 5). In addition, Plaintiff claims in the motion that her "symptoms are present 4 to

9

at 1-2, ECF No. 16). Plaintiff also takes issue with the ALJ's credibility finding, claiming that she "did not give clear and convincing reasons for making an adverse credibility determination." (*Id*. at 2). As discussed next, Plaintiff's assertions find no support in the record.

### 1. Alleged Symptoms and Impairments

The record shows that the ALJ gave "careful consideration" to "all the evidence" in the record (AR 20), devoting significant attention to Plaintiff's alleged physical and mental impairments. (*See id*. at 22-23; Hrg. Tr., AR 59-76). The ALJ identified Plaintiff's "severe impairments" as "'probable' confusional migraine, asthma, and obesity" and agreed that they "have caused more than minimal limitation in the claimant's ability to work." (AR 20). The ALJ also considered Plaintiff's testimony and the medical evidence pertaining to "disability due to seizures, headaches, insomnia, . . . speech impediment," and depression (AR 23), and correctly applied the regulations' "four broad functional areas" for evaluating mental impairments (AR 22). The ALJ found Plaintiff's "statements concerning the intensity, persistence and limiting effects" of her "medically determinable impairments . . . not entirely credible." (AR 23-24). In fact, the ALJ found Plaintiff's credibility "eroded by the inconsistent statements of record and the absence of objective proof to support her subjective complaints." (AR 27).

---

5 days per week at minimum [and] have effectively taken over [her] life." (Mot. at 3-4). Because those developments are after the date of the ALJ's June 9, 2015 decision, they are beyond the scope of this action. As the ALJ noted, a claimant seeking social security benefits has "the right to file a new application at any time[.]" (AR 16). Nothing decided in this case infringes upon that right.

Credibility determinations are "solely within the realm of the ALJ," and "a reviewing court will only intercede where an ALJ fails to articulate a rational explanation for his or her finding." *Callaway v. Berryhill*, 292 F. Supp. 3d 289, 297 (D.D.C. 2018) (quoting *Grant v. Astrue*, 857 F. Supp. 2d 146, 156 (D.D.C. 2012)); *see Carnett v. Colvin*, 82 F. Supp. 3d 1, 16 (D.D.C. 2015) (noting that the "ALJ's assessment of credibility is entitled to great weight and deference, since he had the opportunity to observe the witness's demeanor.'") (quoting *Thomas v. Astrue*, 677 F. Supp. 2d 300, 308 (D.D.C. 2010) (other citation omitted)).

Here, the ALJ explained:

> Aside from the fact that objective clinical and diagnostic findings have been normal throughout the record, [Plaintiff] made several inconsistent statements . . . . There are multiple references to noncompliance with medication, lack of follow-up with providers, and lack of cooperation with workup of [Plaintiff's] conditions, including ae [sic] cardiology consultation that was a part of her seizure workup. In addition, there are two instances of record in which [Plaintiff] reported significant symptoms, yet did not seek emergency medical care due to it being 'tax season,' and due to having plans with her family. The facts suggest that her symptoms may not have been as severe as she has alleged.

(AR 26-27). In assessing Plaintiff's alleged speech impediment, the ALJ cited "the lack of a formal diagnosis," Plaintiff's "inconsistent statements regarding [its] appearance," and her "testimony that it is not continuously present[.]" (AR 21). The ALJ also cited as problematic: (1) the absence of evidence to substantiate the "alleged 'blackout' or 'seizures'" for which Plaintiff was mostly treated but for which "testing was normal, with no findings to support blackout, seizures, or migraines"; (2) the fact that Plaintiff had told Dr. Brosch in January 2015 "that she was totally dependent on and lived with her son" but testified at the hearing that "she lives alone"; (3) Plaintiff's testimony that

11

"she would have difficulty working during the day because of her insomnia," although the record contained no "significant complaints about sleep"; and (4) the lack of evidence supporting Plaintiff's "allegations concerning a diagnosis or work-up for Huntington's disease." (AR 27). Defendant also has cited portions of the record showing (1) that Plaintiff's asthma "was well controlled by medication," (2) the test results of her headaches were "normal . . . not ris[ing] to the level of migraines," and (3) "although overweight, Plaintiff did not comply with recommended diet and exercise." (Def.'s Mem. at 12).

The ALJ's credibility determination is rationally explained and compliant with governing law; therefore, it will not be disturbed. *Cf. Thigpen v. Colvin*, 208 F. Supp. 3d 129, 140 (D.D.C. 2016) (finding "that the ALJ provided exhaustive explanations" for disbelieving claimant's alleged "disabling mental health symptoms"), quoting *Carnett*, 82 F. Supp. 3d at 16, 18 (D.D.C. 2015) (finding decision supported by substantial evidence where "the ALJ's credibility determination was . . . based on the whole record and explained in his decision") and *Brown v. Bowen*, 794 F.2d 703, 706 (D.C. Cir. 1986) ("While contradictory evidence may exist, such credibility determinations are for the factfinder who hears the testimony[.]").

### 2. Medical Opinions

The ALJ duly considered the medical opinions. Plaintiff does not specify which "opinions of her treating medical caretakers" were assigned "little weight" (Br. at 2), but the record indicates that it was those of Dr. Brosch, who opined about Plaintiff's mental impairments. In addition, the ALJ assigned "partial weight" to Dr. Magurno's

12

opinion with regard to Plaintiff's speech impediment and physical limitations. Both doctors were "consultative" only and established no "doctor-patient relationship" with Plaintiff. (AR 1238 and 1250).[3]

The ALJ explained that Dr. Brosch's findings "are inconsistent with the record as a whole and appear based solely on the claimant's subjective report." (AR 22). The ALJ noted that the "record does not contain evidence of mental health concerns or treatment, other than the [2011] diagnosis of 'major depression, in remission.'"[4] (*Id.*). After elaborating on the mental health finding in light of the "four broad functional areas set out in the disability regulations," the ALJ concluded that Plaintiff's "mental health impairment does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore nonsevere." (*Id.*). The ALJ "was not required to uncritically accept the consultative examiner's opinion, given the

---

[3] Under the treating physician rule, a treating physician's opinions must be given "substantial" weight but are not controlling if contradicted by substantial evidence and the ALJ explains why they are given less weight. *Jones v. Astrue*, 647 F.3d 350, 355 (D.C. Cir. 2011). An ALJ "who rejects the opinion of a treating physician" must "explain his reasons for doing so." *Id.* (citation and internal quotation marks omitted). The opinions of consultative examiners, however, are accorded no such deference. Plaintiff does not contend that the ALJ rejected the opinions of her treating doctors in violation of the rule, and it is reasonably safe to conclude from comparing the ALJ's discussion of the treating physician records (AR 24-26) with her findings (AR 27) that any such argument is untenable.

[4] Plaintiff testified at the hearing that she "suffer[s] from depression connected to a few close deaths," starting with her sister, then her granddaughter, and finally her brother, who committed suicide. (AR 59-60). Plaintiff testified that she has "never shaken it" but did not answer whether, as posed by her representative, "any of those deaths [were] recent." (AR 60).

13

glaring inconsistencies and [the questions surrounding] Plaintiff's credibility[.]" *Thigpen*, 208 F. Supp. 3d at 141.

Similarly, the ALJ discounted Dr. Magurno's opinion that Plaintiff had "marked communication limitations" due to "abnormal speech" and could lift and carry at most ten pounds continuously and twenty pounds occasionally. The ALJ explained that those findings were "not substantiated by any objective clinical findings of record" and were inconsistent with other medical evidence. (AR 26). The ALJ found "no clinical or diagnostic findings of record that would warrant more significant [lifting and carrying] limitations than those found by the State medical consultants," (*id*.), who opined that as of June 2013, Plaintiff had "retained the capacity to perform work at a medium exertional level, with additional environmental limitations, given her asthma and alleged history of fainting" (AR 25).

### 3. Plaintiff's Age

Finally, it is clear that the ALJ's consideration "of the entire record" included Plaintiff's age. The ALJ indeed referenced Plaintiff's age in the hypotheticals posed to the vocational expert, including the following:

> Q. Assume a person of the claimant's age, education, and work experience; lifting and/or carrying 50 pounds occasionally, 25 pounds frequently; standing and walking six hours; sitting six hours in an eight hour workday. The individual must avoid concentrated exposure to extreme heat, extreme cold, humidity, fumes, odors, dust, gases, poor ventilation and all exposure to hazards such as machinery and heights. Could a person with that RFC perform claimant's past work?
>
> A. Yes, Your Honor.

(AR 77). "The ALJ's RFC assessment bears on [the claimant's] ability to perform past relevant work (step four) and her ability to do 'other work' " (step five)." *Butler*, 353 F.3d at 1000. The ALJ compared Plaintiff's RFC "with the physical and mental demands" of her past work and found that the past work "does not require the performance of work-related activities precluded by the claimant's residential functional capacity." (AR 27).

In sum, the record contains substantial evidence to support the ALJ's finding that Plaintiff could perform her past relevant sedentary work as a tax preparer, accounts receivable clerk, and an officer manager (AR 27). And if a claimant "can still do [her] past relevant work, [the Commissioner] will find that [she is] not disabled." 20 C.F.R. § 404.1520(a) (4)(iv). Because Plaintiff failed to carry her burden "on the first four steps," the ALJ correctly found her not disabled. *Butler*, 353 F.3d at 997; *see id*. ("If [as here] the claimant does not satisfy step three, the inquiry proceeds to the fourth step, which requires her to show that she suffers an impairment that renders her incapable of performing 'past relevant work.'") (citing 20 C.F.R. §§ 404.1520(e), 416.920(e)).

## IV. CONCLUSION

For the foregoing reasons, Defendant's motion for judgment of affirmance is GRANTED, and Plaintiff's motion for judgment of reversal is DENIED. A corresponding order will issue separately.

Date: July 3, 2018

*Tanya S. Chutkan*
TANYA S. CHUTKAN
United States District Judge